# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**KEVIN M. WOOD,**

    **Plaintiff,**

**v.**                                                                                                **No. 18-cv-0575 SMV**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand to Agency for Rehearing [Doc. 14] ("Motion"), filed on October 22, 2018. The Commissioner responded on December 18, 2018. [Doc. 15]. Plaintiff replied on January 15, 2019. [Doc. 17]. The parties have consented to my entering final judgment in this case. [Doc. 7]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that Plaintiff fails to meet his burden as the movant to show that the Administrative Law Judge ("ALJ") did not apply the correct legal standards or that his decision was not supported by substantial evidence. Accordingly, the Motion will be denied and the Commissioner's final decision, affirmed.

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff was born on December 2, 1985. Tr. 430. He suffered a head injury during a snowboarding accident in 2006, which is the root of his allegedly disabling conditions. *See* Tr. 425. He applied for a period of disability, disability insurance benefits, and supplemental security income on December 21, 2009. Tr. 161, 165. Plaintiff originally alleged a disability onset date of May 1, 2009, but amended the date to January 20, 2008. Tr. 420. His claims have been

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

denied three times by ALJs. Tr. 17–24 (first denial of January 19, 2012); Tr. 553–63 (second denial of May 11, 2015); Tr. 420–31 (third denial of March 30, 2017). This is his second appeal to this Court. *See* Tr. 531–45 (first federal court remand of March 28, 2014); *Wood v. Colvin*, No. 13-cv-0392 SMV (D.N.M. March 28, 2014) (unpublished).

As is pertinent here, ALJ Eric Weiss held a third administrative hearing November 14, 2016, in Albuquerque, New Mexico. Tr. 442–73. Plaintiff appeared by video conference from Farmington, New Mexico, with his attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Karen N. Provine. *Id.*

The ALJ issued the third unfavorable ALJ decision on March 30, 2017. Tr. 420–31. At step one he found that Plaintiff had engaged in substantial gainful activity ("SGA") between his alleged onset date of January 2008 through December 2009, but he had no SGA since that time. Tr. 423. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "cognitive disorder, NOS, secondary to traumatic brain injury; mood disturbance secondary to traumatic brain injury[;] and attention deficit disorder without hyperactivity." *Id.*

At step three the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 423–24. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 425–430. The ALJ found that Plaintiff had:

> the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can understand, remember and carry out only simple instructions and make commensurate work-related decisions in a work setting with few if any changes. [Plaintiff] can frequently interact with supervisors, co-workers and the public. He is able to maintain concentration, persistence and pace during the workday with normal breaks.

Tr. 425.

At step four the ALJ found that Plaintiff was unable to perform past relevant work as a water sales representative. Tr. 430. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 430–31. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* The Appeals Council denied review on April 17, 2018. Tr. 408–11. Plaintiff timely filed the instant action on June 20, 2018. [Doc. 1].

## **Analysis**

Plaintiff argues that remand is warranted because the ALJ erred in weighing the medical opinions of Dr. Cotgageorge and Dr. Ainsley. The Court is not persuaded. Plaintiff's motion will be denied, and the Commissioner's decision will be affirmed.

### Legal Standards

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 416.927(e)(2)(ii) (2012)[3]). That is, when assessing a plaintiff's RFC, an ALJ must explain what weight he assigns to each medical source opinion and why. *Id.* When evaluating the opinion of any medical source, the ALJ must consider:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

---

[3] These regulations apply to this case because Plaintiff's claims were filed prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); 20 C.F.R. §§ 404.1527(c), 416.927(c). Not every factor will apply in each case, and therefore, an ALJ is not required to discuss every factor. SSR 06-03p,[4] 2006 SSR LEXIS 5 at *5. "[T]he ALJ's decision is sufficient if it permits [the court] to follow the adjudicator's reasoning." *Keyes-Zachary*, 695 F.3d at 1164 (internal quotation marks omitted).

Moreover, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). ALJs are required to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p,[5] 1996 SSR LEXIS 2, at *13, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was

---

[4] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 06-03p applies to this case.
[5] SSR 96-5p was rescinded for claims filed on or after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017). Because Plaintiff's claims were filed before March 27, 2017, SSR 96-5p applies to this case.

not adopted." SSR 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7. The ALJ's reasons must be specific and legitimate. *Chapo*, 682 F.3d at 1291.

<u>Plaintiff fails to show reversible error
in the weighing of Dr. Cotgageorge's opinion.</u>

In January of 2008, Ed Cotgageorge, Ph.D., performed a neuropsychological evaluation of Plaintiff, including a battery of tests. Tr. 286–93. Dr. Cotgageorge did not provide any assessment of specific functional limitations for Plaintiff. *See id.* Rather, his report includes opinions about Plaintiff's functioning generally. For example, as cited by Plaintiff, Dr. Cotgageorge opined:

> Results of the Green Word Memory Test show that these results cannot be reliably interpreted. While it is clear that [Plaintiff] sustained a traumatic brain injury, his performance on this test of effort is consistent with individuals, who have advanced dementia to the point that they are hospitalized.
> Results of the Green Word Memory Test can also, be interpreted in the following manner. He could be experiencing severe neurological difficulties, as a result of traumatic brain injury that are capable of producing severe impairment similar to the type/extent seen in dementia. In this case, it appears that he is functioning, with a severe brain injury.
> **SUMMARY:** Results of this current evaluation, although likely inconsistent due to variable effort, are consistent with individuals, who have experienced severe traumatic brain injuries, such as he describes. Without independent confirmation of this, the level of brain injury is suspect. However, based on the description given by his mother and him, he appears to meet have sustained a moderate to severe brain injury. If this is the case then the results do reflect a loss of cognitive abilities. While he did have an Attention Deficit Disorder and probably some learning difficulties prior to this injury, these deficits have been compounded and appear to be more widespread.

Tr. 292.

The ALJ rejected the entirety of Dr. Cotgageorge's opinion. Tr. 428 ("Doctor Cotgageorge's opinion cannot be given any significant weight . . ."). The ALJ gave no weight to

the opinion because of Plaintiff's "insincere effort" in the testing and because the ALJ found that the extremely low performance on the testing across the board was inconsistent with (1) Plaintiff's strong activities of daily living ("ADLs"), (2) "clinical observations of functionality," and (3) Plaintiff's demonstrable ability to work for years after the doctor drafted the report. Tr. 428, *see* Tr. 425, 427.

Plaintiff makes two specific challenges to the ALJ's evaluation of Dr. Cotgageorge's opinion. First, Plaintiff argues that the ALJ failed to apply the correct legal standard in evaluating the opinion because the ALJ impermissibly "picked and chose" from the opinion. [Doc. 14] at 8 (citing *Haga*, 482 F.3d at 1208). Plaintiff points to portions of Dr. Cotgageorge's report suggesting that Plaintiff's performance on the testing could be attributable severe traumatic brain injury as an alternative to poor effort. *Id.* at 8 (quoting Tr. 292). Plaintiff cites to other records evidencing his brain injury and problems with memory and focus. *Id.* at 8–10. On these grounds, Plaintiff concludes that the ALJ committed legal error by "picking and choosing" only the portions of Dr. Cotgageorge's report that supported a finding of not disabled and ignoring the parts that were "consistent with an individual suffering from a moderate to severe brain injury." *Id.* at 8.

The Court is not persuaded that the ALJ impermissibly "picked and chose" from Dr. Cotgageorge's report. This is because the ALJ rejected the entire opinion. The pick-and-chose rule prohibits an ALJ from rejecting portions of a medical opinion while adopting other portions— without explaining why. *See e.g., Haga*, 482 F.3d at 1208 ("We therefore agree that the ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment *while appearing to adopt the others*.") (emphasis added). The ALJ was not required to *discuss* every aspect of Dr. Cotgageorge's opinion. *See Keyes-Zachary*, 695 F.3d at 1161.

Rather, the ALJ was required to *consider* every aspect of the opinion. He says that he considered the entire record, *e.g.*, Tr. 421, and the Court takes him at his word. Additionally, the ALJ was required to make findings explaining why he rejected the opinion. He did make such findings. The ALJ explained that Plaintiff's ADLs, "clinical observations of functionality," and ability to work for years after the issuance of the opinion were inconsistent with the low scores on Dr. Cotgageorge's tests. Tr. 428.

These findings bring us to Plaintiff's second challenge to the ALJ's evaluation of Dr. Cotgageorge's opinion. Plaintiff argues that the ALJ's reasons for rejecting Dr. Cotgageorge's opinion are not supported by substantial evidence. [Doc. 14] at 9. Plaintiff cites evidence that "confirms the severity of [Plaintiff's] traumatic brain injury" and tends to show that Plaintiff has trouble with memory and focus. *Id.* at 8–10. Plaintiff then concludes that "it is unclear" how Plaintiff's ADLs are inconsistent with the doctor's opinion. *Id.* at 10. Next. Plaintiff points out that the ALJ did not provide any citation to the "clinical observations of functionality." *Id.* Lastly, Plaintiff argues that his ability to work after Dr. Cotgageorge rendered his opinion does not indicate that he is not disabled. *Id.* Besides, Plaintiff explains, he only achieved SGA prior to 2010 because he was employed by his parents during a slow period. *Id.*

The Court is not persuaded by Plaintiff's arguments. Plaintiff cites to evidence that could support findings that are more favorable to him, but as Defendant points out, that is not the standard. Plaintiff argues that the ALJ's reasons for rejecting the opinion are not supported by substantial evidence. To amount to "substantial evidence," the ALJ's findings need only be supported by "more than a mere scintilla." It is not enough to show that the evidence could support

a different outcome. *See Lax*, 489 F.3d at 1084. Plaintiff fails to show that the ALJ's reasons are not supported by substantial evidence.

Moreover, the Court finds that the ALJ's reasons for rejecting Dr. Cotgageorge's opinion are supported by substantial evidence. For example, the ALJ himself explained that Plaintiff had "strong" ADLs including caring for his young son part-time, performing maintenance on vehicles, and working some of the time. Tr. 429. Plaintiff does not dispute these activities, and the Court finds that they constitute substantial evidence to support the ALJ's finding that Plaintiff's ADLs are inconsistent with the low scores on Dr. Cotgageorge's testing. Next, the ALJ found that "clinical observations of functionality" were inconsistent with Plaintiff's low scores. The substantial evidence supporting this finding includes, but is not limited to, the GAF scores of 65 assessed by both Dr. Cotgageorge and Dr. Ainsley. Tr. 293, 298. Finally, Plaintiff fails to show that the ALJ erred in finding that his work history was inconsistent with the low scores on Dr. Cotgageorge's testing. Plaintiff is correct that working does not necessarily mean that he is not disabled, but that is not what the ALJ found. Instead, the ALJ found that Plaintiff's work history (after his accident and, indeed, after the doctor's opinion was issued) was inconsistent with the low scores. Plaintiff fails to show any reversible error in that finding. In sum, Plaintiff fails to show that the ALJ's evaluation of Dr. Cotgageorge's opinion warrants remand.

<u>Plaintiff fails to show reversible error<br>
in the weighing of Dr. Ainsley's opinion.</u>

In March of 2010, Juanita Ainsley, Ph.D., examined Plaintiff at the request of the agency. Tr. 295–98. The parties dispute whether Dr. Ainsley opined that Plaintiff would require "structure and supervision" to perform unskilled work. The relevant part of her report is as follows:

10

> [Plaintiff] has a pleasant demeanor and has at least superficial skills to get along with others, including supervisors. His relationship with supervisors has been negatively affected by his difficulty meeting job expectations, remembering instructions and follow through. **He would require structure and supervision to carry out many job expectations. With that support in place, Kevin would be able to carry out semi skilled/skilled tasks in a familiar, routine situation. Pace and persistence would depend on available structure to help him maintain his focus.**

Tr. 298 (emphasis added). The ALJ gave significant weight to Dr. Ainsley's opinion, Tr. 428–29, limited him to unskilled work, but did not require any particular "structure and supervision." The ALJ's RFC included, in pertinent part:

> He can understand, remember and carry out only simple instructions and make commensurate work-related decisions in a work setting with few if any changes. [Plaintiff] can frequently interact with supervisors, co-workers and the public. He is able to maintain concentration, persistence and pace during the workday with normal breaks.

Tr. 425. The ALJ explained himself as follows: "[Dr.] Ainsley said such structure would be necessary only to perform semi-skilled or skilled work whereas the ability to perform unskilled work typically leaves a person capable of gainful employment." Tr. 429.

Here, Plaintiff argues the ALJ "manipulated the doctor's statement to support his RFC." [Doc. 14] at 12. As Plaintiff interprets Dr. Ainsley's opinion, he requires "structure and supervision" for any job, regardless of skill level. To support this interpretation, Plaintiff argues that Dr. Ainsley did not affirmatively mention unskilled work at all. *Id.* at 13. Plaintiff further argues that Dr. Ainsley wrote "that [Plaintiff] would 'require structure and supervision to carry out many job expectations' and 'pace and persistence would depend on available structure to help him maintain focus.'" *Id.* (quoting Tr. 298). Plaintiff argues that it was reversible error for the ALJ to

interpret Dr. Ainsley's "silence" on his ability to perform unskilled work as evidence that he can perform unskilled work without "structure and supervision." *Id.* The Court is not persuaded.

It was reasonable for the ALJ to interpret Dr. Ainsley's opinion as including the opinion that Plaintiff could perform unskilled work without any special "structure and supervision." The text of the doctor's opinion constitutes substantial evidence for the ALJ's interpretation of the opinion. Plaintiff is correct that silence is not evidence. But Dr. Ainsley was not silent. Her opinion on unskilled work might have been implicit, but it was not silent. She explicitly opined that Plaintiff was capable of performing semi-skilled and skilled work in a familiar, routine situation, if he had "structure and supervision." Tr. 298.

> [Plaintiff] would require structure and supervision to carry out many job expectations. With **that support** [i.e., structure and supervision] in place, Kevin would be able to carry out semi skilled/skilled tasks in a familiar, routine situation. Pace and persistence would depend on available structure to help him maintain his focus.

Tr. 298 (emphasis added). Although Plaintiff's interpretation of the opinion may be reasonable, the Court finds that the ALJ's interpretation was also reasonable. The quoted portion of Dr. Ainsley's opinion amounts to substantial evidence to support the ALJ's finding that Plaintiff can perform unskilled work without special "structure and supervision." Plaintiff fails to show that remand is warranted.

## Conclusion

Plaintiff's arguments are not persuasive. He fails to show reversible error in the ALJ's weighing of Dr. Cotgageorge's and Dr. Ainsley's opinions. Accordingly, Plaintiff's motion will be denied, and the Commissioner's decision will be affirmed.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing [Doc. 14] is **DENIED**. The Commissioner's final decision is affirmed.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**